CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph) / +1.818.763.2308 (fax)
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LHF PRODUCTIONS, INC. a Nevada corporation, | Case No.: 2:16-cv-02028-JAD-NJK |
| Plaintiff, | |
| vs. | |
| BRIAN KABALA, JOHN KOEHLY, DONALD PLAIN, and ANTE SODA. | |
| Defendants | |

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**
**(HEARING REQUESTED)**

Plaintiff LHF PRODUCTIONS, INC. ("PLAINTIFF"), by and through its counsel, Charles Rainey, Esq. of HAMRICK & EVANS LLP, hereby submits its response to the Court's ORDER TO SHOW CAUSE, issued on April 27, 2017 [Doc. No. 35], in which the Court demanded that the Plaintiff show cause why Defendant JOHN KOEHLY should not be dismissed from the above-captioned case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. This response is based upon the attached memorandum of points and authorities, any exhibits attached thereto, the pleadings and papers on file herein, and any further arguments to be had at the hearing of this matter.

*Respectfully submitted May 11, 2017.*

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ./MBA/LL.M.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph) / +1.818.763.2308 (fax)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff has diligently and faithfully pursued the present action, and to dismiss any part of the case at this juncture would be contrary to the meaning, purpose and intent of FRCP 41(b) and fly in the face of this Court's long standing preference to adjudicate matters on the merits. While it is true that the procedural peculiarities of cyber-piracy litigation cause inherent delays in the early stages of litigation, any perceived delay in the present case is purely an affect of this particular brand of litigation and in no way the result of any neglect on the part of the Plaintiff. At no point during these proceedings has Plaintiff engaged in any conduct or failed to engage in any conduct that could reasonably be characterized as neglect (excusable or otherwise). On the contrary, Plaintiff's counsel has diligently litigated this matter within the parameters of the Federal Rules of Civil Procedure and continues to pursue its claims.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the producer of the feature length motion picture, "London Has Fallen." This case arises from the Plaintiff's discovery that its film, while still in theatrical release, had been pirated and illegally shared over the BitTorrent network by millions of users throughout the United States and throughout the world.

In an effort to track and identify the individual infringers responsible for the illegal copying and sharing of its motion picture, Plaintiff engaged the investigative services of MaverickEye, a company organized and existing under the laws of Germany, with its principal address at Heilbronner Strasse 150, 70191 Stuttgart, Germany. Doc No. 1 (Complaint) at ¶¶ 36-42; Rainey Decl. at ¶¶ 9-12. MaverickEye employed its highly sophisticated software to surveil Internet traffic within the BitTorrent network to identify, analyze, archive and document unauthorized copying and distribution of the Plaintiff's motion picture. *Id*.

The data provided by MaverickEye confirmed that Defendants used BitTorrent client

HAMRICK & EVANS LLP

software to purposefully search for and intentionally copy and download unauthorized and infringing copies of the subject film. *Id*. Each Doe Defendant then made these copies available for downloading by other BitTorrent users, thus willfully joining in a collective effort (known as "a swarm") to distribute infringing copies of the Plaintiff's motion picture to one another and countless other peers of the swarm for download and distribution during the period of infringement, resulting in the unauthorized, viral dissemination of the Plaintiff's motion picture. Doc No. 1 at ¶¶ 33-35; Rainey Decl. at ¶ 12.

However, at this point, Maverickeye was only able to identify the individual infringers by their respective IP Addresses. Doc No. 1 at ¶ 7; Rainey Decl. at ¶ 13. The only means of unveiling the true identities of the infringers was to: (1) file suit against anonymous Doe defendants, identifying each Defendant only by its respective IP Address; (2) move the court to open limited discovery for the purpose of subpoenaing the subscriber information from the Defendants' Internet Service Provider ("ISP"); and (3) upon obtaining the subscriber information from the ISP, conduct a further investigation to confirm further confirm each subscriber's identity and assess the strengths and weaknesses of the claims made against each subscriber. Rainey Decl. at ¶ 14; *see also* Doc. No. 3 (*Ex Parte* Motion for Discovery).

This process of identifying the Defendants causes an unavoidable appearance of delay in the early stages of litigation. Rainey Decl. at ¶¶ 15-21. In a typical court case, a Plaintiff knows the true identity of at least one of the Defendants before filing suit. In fact, in most cases, Plaintiffs have a statute of limitations of two years or more from the date of the alleged injury to determine whether or not to even file suit. However, Plaintiff's in anti-piracy cases do not have this luxury. *Id*.

On August 26, 2016, the Plaintiff filed the present action, identifying twenty-three (23) Defendants by their respective IP Addresses. Doc No. 1 at Ex 1. On that same day, the Plaintiff filed its *ex parte* motion seeking to open discovery for the limited purpose of unveiling the true identities of the Defendants. Doc No. 3. A little less than a week later, on August 31, 2016, the Court entered an order granting the Plaintiff's motion for discovery. Doc No. 5. And then, on that same day of August 31, 2016, pursuant to the Court's order, the

HAMRICK & EVANS LLP

3

1  Plaintiff served a subpoena upon Cox Communications, the Internet Service Provider ("ISP")
2  for sixteen (16) of the twenty-three (23). Rainey Decl. at ¶ 25. The other seven (7) Defendant
3  IP Addresses were managed by the ISP CenturyLink. Rainey Decl. at ¶ 25. However, soon
4  after service of the Subpoena upon Cox Communications, Plaintiff's counsel decided not to
5  pursue the claims against CenturyLink customers, and, consequently did not serve a subpoena
6  upon CenturyLink. Rainey Decl. at ¶ 25.

7  On September 21, 2016, Cox Communications served its subpoena response on the
8  Plaintiff; however, at that time, Cox Communications was only able to identify the subscribers
9  associated with fourteen (14) of the sixteen (16) Defendant IP Addresses. Rainey Decl. at ¶ 28.
10 Cox Communications delivered this particular subpoena response (in conjunction with a
11 response from another case [2:16-cv-01918]) with surprising speed. Rainey Decl. at ¶ 29.
12 Usually, ISPs require a minimum of forty-five (45) days to respond to subpoenas like the one
13 deployed by the Plaintiff in this case. Rainey Decl. at ¶ 30.

14 Roughly one week after its receipt of the subpoena response, Plaintiff's counsel
15 prepared and dispatched demand letters to be served on each of the subscribers identified under
16 the subject subpoena. Rainey Decl. at ¶ 31. The initial demand letters serve three purposes: (1)
17 they provide the accused subscribers with notice that they are at risk of being named in a
18 pending lawsuit; (2) they encourage settlement of the pending claims; and (3) they initiate a
19 dialogue between Plaintiff's counsel and the accused subscribers, allowing Plaintiff to gather
20 additional information necessary in determining whether and to what extent to pursue its
21 claims. Rainey Decl. at ¶ 32. In anti-piracy cases, the demand and settlement phase, which in
22 other cases would typically occur prior to filing suit, occurs after the suit has been filed.
23 Rainey Decl. at ¶¶ 15-21. This necessary process may make it appear, at least initially, as if
24 the case is languishing on the Court's docket. *Id*. However, throughout this time period,
25 Plaintiff was in regular communication with accused subscribers and diligently working to
26 resolve the pending dispute as effectively and efficiently as possible. Rainey Decl. at ¶ 21.

27 In this case, Plaintiff's counsel issued two (2) rounds of demand letters to the
28 Defendants before amending its Complaint to add parties. Rainey Decl. at ¶¶ 33. Furthermore,

during this initial demand phase, Plaintiff reached confidential settlements with four (4) subscribers and elected not to pursue claims against two (2) other subscribers. Rainey Decl. at ¶ 34.

On November 22, 2016, Plaintiff filed its amended complaint in the present action, identifying a total of ten (10) defendants. Based upon FRCP 4(m), the Plaintiff was afforded a deadline of February 20, 2017 to serve all of the named Defendants. In this interim period, Plaintiff was able to reach a confidential settlement with one (1) more Defendant. By January 11, 2017, when the Plaintiff submitted its proposed summonses, only nine (9) Defendants remained in the case. Rainey Decl. Doc. No. 9 (issued summonses).

Of those nine (9) remaining defendants, Plaintiff was able to effectuate service upon four (4) of them before the service deadline of February 20, 2017. Doc Nos. 11, 12, 13, and 15 (summons returned executed). While Plaintiff also attempted service on the other remaining Defendants prior to the service deadline, it was unable to effectuate service upon those five (5) other Defendants within the allotted time frame. Rainey Decl. at ¶ 39. In an effort to serve those remaining parties, Plaintiff filed a motion seeking to extend the deadline for service. *See* Doc Nos. 25, 27. Even though the Court granted the motion to extend time, the Plaintiff ultimately dismissed those remaining parties due to the fact that some of them had separately settled and others proved exceedingly difficult to serve. Rainey Decl. at ¶ 41.

Of the four (4) Defendants remaining in the case, all but one (1), JOHN KOEHLY, submitted an answer or other responsive pleading. Doc. Nos. 18, 19, 22. Mr. Koehly was served on February 18, 2017. Doc. No. 15. At the time of the filing of the present Order to Show Cause, Plaintiff's counsel was in the midst of preparing the Motion for Default Judgment to be filed against Mr. Koehly. Rainey Decl. at ¶ 44. To that end, Plaintiff moved for entry of clerk's default against Mr. Koehly on May 5, 2017, and the Court's Clerk correspondingly entered default against those parties on May 8, 2017. Doc. Nos. 44 and 46. As soon as the Plaintiff resolves the pending orders to show cause in this Case, it is the Plaintiff' intent to seek default judgment against Mr. Koehly. Rainey Decl. ¶ 47.

///

# III.

# LEGAL ARGUMENT

Dismissal of any part of the present action under FRCP 41(b) would be improper, given that, at no point during this litigation has the Plaintiff caused any unreasonable delay or engaged in any conduct that would constitute neglect. On the contrary, the Plaintiff has diligently pursued its claims within the limits of the law, while attempting to afford all Defendants ample opportunity to answer the claims alleged herein and present any defenses thereto.

Federal Rule of Civil Procedure 41(b) states: "If the plaintiff fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). A dismissal under 41(b) "operates as an adjudication on the merits." *Id*. A dismissal pursuant to Rule 41(b) "'must be supported by a showing of unreasonable delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). The District Court must also weigh the following factors to determine whether a Rule 41(b) dismissal is warranted: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.'" *Id*. (*quoting Henderson*, 779 F.2d at 1423); *see also KEN-MAC Metals v. Indep. Sheet Metal, Inc.* 3:09-cv-00693-VPC (D. Nev., May 19, 2011). "Dismissal, however, is a harsh penalty and should be imposed only in extreme circumstances." *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987), cert. denied; *quoting Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986).

The present case is less than a year old. The Plaintiff filed the present action immediately upon discovering the Defendants infringing activity, identifying each Defendant by their respective IP Addresses. On the very same day as the filing of its complaint, Plaintiff moved to open limited discovery to determine the true identities of the Defendants. The same day that the Court granted Plaintiff leave to conduct early discovery, Plaintiff immediately served its subpoena upon the Defendants' ISP. When the ISP served its response upon the Plaintiff, the Plaintiff prepared and dispatched demand letters to the identified subscribers within

HAMRICK & EVANS LLP

6

the following week. The Plaintiff then proceeded to serve an additional round of demand letters on the Defendants, in an effort to ensure that all parties were fully aware of the pending litigation before being named as parties hereto. Then, after the two (2) rounds of demand letters were either ignored or rebuked, the Plaintiff amended its complaint and added parties. Even then, the Plaintiff effectuated service upon the remaining Defendants (i.e., those Defendants still named in this case) within the deadline prescribed by FRCP 4(m), including Defendant JOHN KOEHLY.

The only conceivable delay that the Court might be able to point to is the fact that the Plaintiff allowed approximately six weeks time to elapse before moving for entry of a clerk's default against Mr. Koehly. However, such delay is hardly unusual, nor does it in any way prejudice the rights of the Defendants. In fact, if anything, such delay was designed to afford the Defendants ample opportunity to respond to the allegations in the Complaint. Moreover, as explained in the attached declaration, the Plaintiff has every intention of promptly filing a motion for default judgment against Mr. Koehly once it has overcome the Court's current pending Orders to Show Cause.

Consequently, dismissal of any part of the present action under FRCP 41(b) would be prejudicial to the rights of the Plaintiff, wholly unjustified under the circumstances, and an overly harsh penalty entered in contradiction with existing case law. *See e.g., Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987), cert. denied; *quoting Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986).

///
///
///
///
///
///
///
///
///

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff asserts that there is no reasonable basis to dismiss the present case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, and respectfully requests that this court allow the entirety of the present case to proceed on its merits.

*Respectfully submitted May 8, 2017.*

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ./MBA/LL.M.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph) / +1.818.763.2308 (fax)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP