CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph) / +1.818.763.2308 (fax)
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LHF PRODUCTIONS, INC. a Nevada corporation,<br><br>        Plaintiff,<br>vs.<br><br>BRIAN KABALA, JOHN KOEHLY, DONALD PLAIN, and ANTE SODA.<br><br>        Defendants | Case No.: 2:16-cv-02028-JAD-NJK |

**DECLARATION OF CHARLES C. RAINEY IN SUPPORT OF PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**
**(HEARING REQUESTED)**

I, CHARLES C. RAINEY, the undersigned individual, hereby make the following declaration:

1. I am over the age of 18 and am otherwise competent to make this declaration.

2. This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3. Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the statements made herein are true and correct, except for those matters qualified as stated under my informed belief, and, as to those matters, I believe them to be true.

4. I am the attorney of record for the Plaintiff in the above-captioned case, LHF Productions, Inc., a Nevada corporation.

5. The Plaintiff has hired other attorneys in other jurisdictions to file similar cases, such as Illinois, Oregon, Washington, Arizona, Colorado, and Texas, with whom I have been in contact,

in an effort to coordinate our efforts in these cases and develop a set of best practices in anti-piracy litigation.

6. I am informed and believe that Plaintiff is the producer of the feature length motion picture, "London Has Fallen."

7. This belief is supported by the copyright registration for the motion picture on file with the United States Copyright office as well as the fact that the owners of the Plaintiff company are Trevor Short and Avi Lerner, both of whom are identified in the credits of the motion picture as its producers.

8. This case arises from the Plaintiff's discovery that its film, while still in theatrical release, had been pirated and illegally shared over peer-to-peer file sharing networks by countless users throughout the United States and throughout the world.

9. In an effort to track and identify the individual infringers responsible for the illegal copying and sharing of its motion picture, Plaintiff engaged the investigative services of MaverickEye, a company organized and existing under the laws of Germany, with its principal address at Heilbronner Strasse 150, 70191 Stuttgart, Germany.

10. I am informed and believe that MaverickEye employed its software to surveil Internet traffic within the BitTorrent network to identify, analyze, archive and document unauthorized copying and distribution of the Plaintiff's motion picture.

11. The data provided by MaverickEye confirmed that the Defendants (originally identified in the present case as John and Jane Does) used BitTorrent client software to purposefully search for and intentionally copy and download unauthorized and infringing copies of the subject film.

12. The information provided by MaverickEye further confirmed that each Doe Defendant then made copies of the subject motion picture available for downloading by other BitTorrent users, thus willfully joining in a collective effort (known as "a swarm") to distribute infringing copies of the Plaintiff's motion picture to one another and countless other peers of the swarm for download and distribution during the period of infringement, resulting in the unauthorized, viral dissemination of the Plaintiff's motion picture.

HAMRICK & EVANS LLP

13. However, prior to filing the present action, Maverickeye was only able to identify the individual infringers by their respective IP Addresses.

14. As such, the only viable means of unveiling the true identities of the infringers was to:

   a. file suit against anonymous Doe defendants, identifying each Defendant only by its respective IP Address;

   b. move the court to open limited discovery for the purpose of subpoenaing the subscriber information from the Defendants' Internet Service Provider ("ISP"); and

   c. upon obtaining the subscriber information from the ISP, conduct a further investigation to confirm further confirm each subscriber's identity and assess the strengths and weaknesses of the claims made against each subscriber.

15. This process of identifying the Defendants causes an unavoidable appearance of delay in the early stages of litigation.

16. In a typical court case, a Plaintiff knows the true identity of at least one of the Defendants _before_ filing suit.

17. In most cases, Plaintiffs have a statute of limitations of two years or more from the date of the alleged injury to determine whether or not to even file suit.

18. Conversely, Plaintiff's in anti-piracy cases do not know the identity of the alleged tortfeasor until after filing its lawsuit.

19. Consequently, the investigation and assessment of claims that would typically occur prior to filing suit, must, instead, occur in the early stages of litigation while the Plaintiff conducts limited discovery in advance of the Rule 26(f) conference.

20. From the perspective of the docket, it might appear as though the case is unattended during this discovery period.

21. However, nothing could be further from the truth: during this initial period, Plaintiff's counsel is: issuing one or more subpoenas to ISPs; dispatching demand letters to individual subscribers identified by those ISPs; conducting a further investigation of each identified

HAMRICK & EVANS LLP

subscriber; negotiating settlements with individual subscribers; and engaging in a host of related activities in an effort to whittle the case down.

22. In the present case, on August 26, 2016, I filed the Plaintiff's Complaint, identifying twenty-three (23) Defendants by their respective IP Addresses.

23. On that same day, I filed the Plaintiff's *ex parte* motion seeking to open discovery for the limited purpose of unveiling the true identities of the Defendants.

24. A little less than a week later, on August 31, 2016, the Court entered an order granting the Plaintiff's motion for discovery.

25. And then, on that same day of August 31, 2016, pursuant to the Court's order, I served a subpoena upon Cox Communications, the Internet Service Provider ("ISP") for sixteen (16) of the twenty-three (23).

26. The other seven (7) Defendant IP Addresses were managed by the ISP CenturyLink.

27. However, soon after service of the Subpoena upon Cox Communications, I decided not to pursue the claims against CenturyLink customers, and, consequently elected not to serve a subpoena upon CenturyLink.

28. On September 21, 2016, I received the subpoena response from Cox Communications; however, at that time, Cox Communications was only able to identify the subscribers associated with fourteen (14) of the sixteen (16) Defendant IP Addresses.

29. Cox Communications delivered this particular subpoena response (in conjunction with a response from another case [2:16-cv-01918]) with surprising speed.

30. Usually, ISPs require a minimum of forty-five (45) days to respond to subpoenas like the one deployed by the Plaintiff in this case.

31. Roughly one week after my receipt of the subpoena response, I prepared and dispatched demand letters to be served on each of the subscribers identified under the subject subpoena.

32. The initial demand letters serve three purposes: (1) they provide the accused subscribers with notice that they are at risk of being named in a pending lawsuit; (2) they encourage settlement of the pending claims; and (3) they initiate a dialogue between Plaintiff's counsel and

the accused subscribers, allowing Plaintiff to gather additional information necessary in determining whether and to what extent to pursue its claims.

33. I ultimately issued two (2) rounds of demand letters to the Defendants before amending its Complaint to add parties.

34. Furthermore, during this initial demand phase, I was able to negotiate confidential settlements with four (4) subscribers; furthermore, after conducting an independent investigation, I elected not to pursue claims against two (2) other subscribers.

35. On November 22, 2016, I filed the Plaintiff's amended complaint, identifying a total of ten (10) defendants.

36. In this interim period allowed for service under FRCP 4(m), I was able to reach a confidential settlement with one (1) more Defendant.

37. By January 11, 2017, when my secretary submitted the proposed summonses to the Court, only nine (9) Defendants remained in the case.

38. Our process server was able to serve four (4) of those nine (9) named defendants before the 4(m) service deadline of February 20, 2017.

39. While our process server also attempted service on the other remaining Defendants prior to the service deadline, it was unable to effectuate service upon those five (5) other Defendants within the allotted time frame.

40. In an effort to serve those remaining parties, I filed a motion seeking to extend the deadline for service.

41. However, even though the Court granted the motion to extend time, I ultimately dismissed the remaining parties due to the fact that some of them had separately settled and others proved exceedingly difficult to serve.

42. Of the four (4) Defendants remaining in the case, all but one (1), JOHN KOEHLY, submitted an answer or other responsive pleading.

43. Mr. Koehly was served on February 18, 2017.

44. At the time of the filing of the present Order to Show Cause, I was actually in the midst of preparing the Motion for Default Judgment to be filed against Mr. Koehly.

45. To that end, I moved for entry of clerk's default against Mr. Koehly on May 5, 2017, and the Court's Clerk correspondingly entered default against Mr. Koehly on May 8, 2017.

46. As soon as I am able to resolve the pending orders to show cause in this Case, it is my intent to seek default judgment against Mr. Koehly.

47. Further declarant sayeth naught.

Dated this 11th day of May, 2017.

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ./MBA/LL.M.
Nevada Bar No. 10723

HAMRICK & EVANS LLP