CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)

*Attorney for Plaintiff/Counter-Defendant*
LHF PRODUCTIONS, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LHF PRODUCTIONS, INC., a Nevada corporation, <br><br> Plaintiff, <br> vs. <br> BRIAN KABALA <br><br> Defendant. | Case No.: 2:16-cv-02028-JAD-NJK |
| BRIAN KABALA, <br><br> Counter-Claimant, <br> vs. <br> LHF PRODUCTIONS, INC., a Nevada corporation <br><br> Counter-Defendant. | |

**PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR ENTRY OF ORDER AUTHORIZING PLAINTIFF/COUNTER-DEFENDANT TO SERVE THIRD PARTY SUBPOENA ON COX COMMUNICATIONS, INC. AND AUTHORIZING COX COMMUNICATIONS, INC. TO RELEASE CERTAIN SUBSCRIBER INFORMATION**

Plaintiff/Counter-Defendant (the "Plaintiff"), LHF PRODUCTIONS, INC., by and through undersigned counsel hereby moves for entry of an order authorizing Plaintiff to serve a third party subpoena *duces tecum* for deposition (the "Subpoena") on COX COMMUNICATIONS, INC. ("Cox" or the "ISP") and authorizing Cox to release certain subscriber information about Defendant Brian Kabala (the "Defendant"), and files this memorandum in support thereof. This

- 1 -

Motion is based on the Points and Authorities attached hereto, the pleadings and papers on file, and any argument to be had at any hearing of this matter.

Dated: December 13, 2017

*Respectfully submitted,*

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ./MBA/LL.M.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
*Attorney for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

1. Cox is a cable operator within the meaning of the Cable Act, 47 U.S.C. § 522(5). Consequently, a court order authorizing Cox to disclose documents and information about Defendant, its subscriber, is necessary. *Id.* at § 551(c)(2)(B) ("A cable operator may disclose such information if the disclosure is . . . made pursuant to a court order authorizing such disclosure . . . ."). Cox is unlikely to respond to a Subpoena seeking subscriber information without a Court Order instructing it to do so.

2. Cox possesses relevant documents and information referring or relating to: (a) DMCA notices and any other copyright infringement notices Cox sent to Defendant (collectively, "Notices of Infringement") and any response from Defendant to his ISP related thereto; (b) the subscriber notification letter Cox sent to Defendant regarding the release of Defendant's identifying information in the instant lawsuit; (c) Cox's lease of any electronic devices to Defendant, including rental of a modem and router; (d) Cox's policy and procedures regarding password installation for a Subscriber's modem and router; (e) Plaintiff's ability to lay the foundation for the introduction of the correlation of IP address to subscriber for purposes of use at trial (i.e., laying the foundation that the correlating documents produced by Cox are business records and computer records); and (f) the reliability of Cox's correlating process.

3. 47 U.S.C. § 551(c) does not impose any additional limitations on the scope of discovery in a lawsuit. Accordingly, the only issue raised by this Motion is whether the information outlined above is discoverable.

4. Pursuant to Fed. R. Civ. P. 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b). *See* Fed. R. Civ. P. 45 (Committee Notes 1946) ("[S]ubdivision (d)(1) properly gives the subpoena for documents or tangible things the same scope as provided in Rule 26(b)[.]")

### A. Prior Notices of Infringement Are Relevant and Discoverable

5. "Cox will process notifications of claimed infringement under subsections 512(b), (c), and (d) of the Digital Millennium Copyright Act ("DMCA", found at 17 U.S.C. § 512)."[1] "[F]or notifications provided under DMCA subsection 512(c)(1)(C), COX will take reasonable steps to forward the written notification to the allegedly infringing subscriber ("Subscriber") and to notify the Subscriber that Cox has removed or disabled access to the material."[2] "A Subscriber may provide a counter notification to a notification provided under DMCA subsection 512(c)(1)(C) by providing a written communication to Cox's designated agent . . . ."[3]

6. "Cox [also] provides an online form that copyright holders should use to send notifications related to alleged copyright infringement by its users based on the standards of the Automated Copyright Notice System (ANCS)."[4] "Copyright holders [can] use this online form to submit complaints related to alleged peer-to-peer file sharing (i.e. sharing media files via peer-to-peer networking technology), or other forms of copyright notice other than those sent pursuant to Sections 512(b)–(d) of the DMCA ("ISP Conduit Notices")."[5]

7. Accordingly, receipt of prior Notices of Infringement makes it more likely that Defendant was aware that his Internet service was being used to infringe. In general, a subscriber's failure to act in response to these notices makes it more likely he or she is directly or contributorily liable. Further, since all such prior Notices of Infringement will relate to BitTorrent

---

[1] https://www.att.com/legal/terms.dmca.html (last accessed on July 27, 2017)
[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] *Id*.

use generally, the receipt of these notices will further establish that Defendant was using BitTorrent during the period of recorded infringement. Accordingly, this information goes to Defendant's knowledge, intent, and "know how." *See* Fed. R. Evid. 404(b)(2) ("[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). For instance, in *Malibu Media, LLC v. Curt Vandenheuvel*, No. 3:13-cv-01579-PDB (M. D. FL. January 26, 2016), CM/ECF 87, an ISP responded to a similar subpoena by producing *hundreds* of Notices of Infringement that were e-mailed to the defendant. Some notices resulted in either: (1) the ISP *calling* the defendant via telephone to advise of the ongoing infringement; or (2) an in-browser alert *requiring* defendant to acknowledge receipt of the notices in order to re-enable his Internet service.

8. Here, there is a reasonable chance Defendant received prior Notices of Infringement. Indeed, Defendant's existing document production already shows that he received at least two prior notices of Infringement. And, in numerous similar cases Plaintiff has learned that a defendant whom it has sued had received numerous prior Notices of Infringement. Also, if Defendant denies receiving notices, the receipt of them is relevant impeachment evidence.

9. Notices of Infringement also undermine any attempt by Defendant to assert a WiFi hacking or unsecure WiFi defense. That is, if Defendant attempts to assert that some unknown third party hacked or accessed his wireless Internet and used it to download movies via BitTorrent, Defendant could have been made aware of such misuse of his Internet by a Notice of Infringement from his ISP.

10. Further, the Notices of Infringement can help demonstrate the length of time that Defendant was assigned the subject infringing IP address. In prior cases Notices of Infringement have helped prove that a defendant was assigned the same IP address for months prior to the initiation of Plaintiff's lawsuit. This is relevant because it may show that Defendant was assigned the relevant IP address during the entire period of recorded infringement.

11. Finally, Notices of Infringement help prove that Plaintiff's infringement detection software works. In many cases Plaintiff's investigators detected the infringement of third party works by a defendant's IP address, and Plaintiff subsequently learned that the defendant's Internet

1  service provider had sent the defendant Notices of Infringement for those same third party works.
2  Thus, the Notices of Infringement helped prove that the correct IP address was tracked to the
3  corresponding individual.

### B. Documents Sent From Cox to Defendant Regarding The Release of Subscriber Identifying Information in this Lawsuit are Relevant and Discoverable

6  12.   Plaintiff seeks documentation Cox sent to Defendant regarding the release of Defendant's identifying information in the instant lawsuit pursuant to Plaintiff's subpoena from October 2016.

9  13.   Under 47 U.S.C. § 551(c)(2)(B), a cable operator may disclose subscriber identifying information pursuant to a court order if the cable provider notifies the subscriber of such an order.  In the instant case, Plaintiff filed a Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference, [ECF No. 3], wherein Plaintiff sought a Court Order authorizing Cox to disclose Defendant's identifying information.  The Court subsequently granted the Motion, and Plaintiff served Cox with the subpoena.  To comply with 47 U.S.C. § 551(c)(2)(B) and this Court's Order, Cox notified Defendant of the lawsuit and Court order.  Now, Plaintiff seeks a copy of the Notice and other documents whereby Cox notified Defendant of this lawsuit.  This document is relevant because it provides the date when Defendant first became aware of the instant lawsuit and when his duty to preserve evidence commenced.

### C. Documents Regarding Cox's Lease of Any Electronic Devices or Equipment to Defendant are Relevant and Discoverable

21  14.   Plaintiff's subpoena seeks documents that refer or relate to Cox's lease of any electronic devices or equipment to Defendant, including the modem and router.  Plaintiff specifically seeks to obtain additional detailed information regarding the make and model of the device(s) used in Defendant's home during the period of recorded infringement.

25  15.   The foregoing is relevant because different routers and modems models have different capabilities, settings, and WiFi ranges.  Indeed, for some routers it is impossible to configure the main network without a password.  Other routers auto-generate lengthy alphanumeric passwords.  In addition, routers have limited strength and signal; to wit: only a

1  computer device within a certain distance can access the router.  Further, WiFi routers lose signal
2  strength the farther the computer device is from the router and if the signal has to pass through
3  barriers like walls, trees, fences, etc.  Disclosure of the brand name and model number of
4  Defendant's modem and router along with physical evidence associated with the Defendant's
5  residence will allow Plaintiff's expert, if necessary, to evaluate the router's capabilities and further
6  prove that Defendant is the most likely infringer.

        D.   <u>Documents and Information Which Refer or Relate to Cox's Policy and Procedure Regarding the Installation of Passwords for a Subscriber's Internet is Relevant and Discoverable</u>

10        16.   Plaintiff's subpoena seeks documents and information on Cox's Policy and
11  Procedure regarding the setup of a subscriber's Internet password.  Some ISP's employ
12  technicians to install a subscriber's devices and Internet.  Prior to installation, ISP's may instruct
13  technicians to password protect the subscriber's modem and router.  Accordingly, Plaintiff seeks
14  to learn about Cox's policy and procedure regarding password installation for a subscriber's
15  Internet.

16        17.   The foregoing is relevant because it is possible that Cox placed (or instructed
17  Defendant on how to place) a password on Defendant's Internet.

        E.   <u>Documents Which Refer or Relate to Cox's Correlation of IP Address to Subscriber and Correlation Reliability is Relevant and Discoverable</u>

20        18.   Plaintiff's subpoena also seeks documents and information related to Cox's
21  correlation of IP address to subscriber.  The reliability of the ISP's correlating techniques is highly
22  relevant because it will show that Cox's correlation of IP address to subscriber (Defendant) is
23  accurate.  It should eliminate any argument that there was a misidentification at the ISP correlation
24  level.  Indeed, in similar cases Cox has repeatedly testified that it was "absolutely certain" that its
25  correlation was correct.  This powerful testimony practically forecloses the argument that there
26  was an error in this process, and without countering evidence leaves Defendant with impermissible
27  speculations.
28     ///

19. Since the foregoing documents and information are discoverable information within the meaning of Fed. R. Civ. P. 26(b), this Court should grant the instant motion.

20. A deposition regarding the foregoing documents and information is also needed: (a) so that Plaintiff can avoid surprises at trial and properly prepare for trial; and (b) because Cox's 30(b)(6) corporate representative may be located "more than 100 miles from the place of hearing or trial" and the deposition may therefore need to be read into evidence. *See* Fed. R. Civ. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness . . . if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial . . . unless it appears that the witness's absence was procured by the party offering the deposition.").[6]

21. On December 5, 2017, the undersigned attempted to confer with Defense counsel regarding the relief requested in the instant Motion in hopes of obtaining the opposing party's consent to file the present motion jointly, noting that the information sought would be of value to both Plaintiff and Defendant in determining the veracity of the claims asserted in the present case; however, on December 11, 2017, Defense Counsel responded by explaining that the Defense would not join in the motion, but did not object to the Plaintiff's efforts to obtain copies of any DMCA notices the Defendant might have received from his Internet Service Provider.

22. Finally, while discover in this matter is set to end on the very date of this filing, the Parties are in the process of preparing a joint stipulation to extend the deadlines for discovery.

///
///
///
///
///
///
///
///

---

[6] Prior to scheduling a deposition, Plaintiff will work with and confer with COX COMMUNICATIONS, INC. and Defendant regarding the admissibility of COX COMMUNICATIONS, INC.'s business records declaration at trial.

WHEREFORE, Plaintiff respectfully requests this Court enter an order authorizing Plaintiff to serve a third party subpoena *duces tecum* for deposition on Cox and authorizing Cox COMMUNICATIONS, INC. to release certain subscriber information about Defendant as set forth above. A proposed order is attached for the Court's convenience.

Dated: December 13, 2017

Respectfully submitted,

/s/ Charles C. Rainey
CHARLES C. RAINEY (NV Bar No. 10723)
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
*Attorney for Plaintiff*