# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LHF Productions, Inc., a Nevada
Corporation,

     Plaintiff

v.

Brian Kabala,

     Defendant

Case No.: 2:16-cv-02028-JAD-NJK

**Order Granting in Part and Denying in
Part Motions for Attorney's Fees and
Costs: Awarding Kabala Costs and
Awarding LHF Productions, Inc.
Attorney's Fees**

[ECF Nos. 184, 197]

     I previously granted defendant Brian Kabala a with-prejudice dismissal of LHF
Productions, Inc.'s copyright-infringement claims, but I dismissed Kabala's counterclaims for
declaratory judgment and abuse of process based, in part, on LHF's special motion to dismiss
under Nevada's anti-SLAPP laws and denied his request for reconsideration.[1]  What remains to
be determined is each party's request for attorney's fees and costs.[2]  The with-prejudice
dismissal makes Kabala a prevailing party under the Copyright Act,[3] but he has not shown that
he is entitled to an attorney-fee award under the test that the United States Supreme Court set out
in *Fogerty v. Fantasy, Inc.*,[4] so I deny his request for attorney's fees and award him costs as "a
matter of course" under Federal Rule of Civil Procedure 54(d)(1).  LHF is also a prevailing
party, having succeeded in litigating its anti-SLAPP motion for Kabala's abuse-of-process

---

[1] ECF Nos. 179, 221.

[2] ECF Nos. 184 (Kabala's motion for attorney's fees and costs), 197 (LHF's motion for
attorney's fees).

[3] 17 U.S.C. § 505.

[4] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

counterclaim. I award LHF attorney's fees, but I reduce the amount to $47,154 to reflect only the fees that LHF incurred in litigating the anti-SLAPP motion and related matters.

**Background**

In August 26, 2016, LHF filed its initial complaint against 23 John and Jane Does whom it alleged used "the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work[: the film *London has Fallen*]."[5] That November, LHF amended its complaint to specifically identify defendant Brian Kabala after it traced copyright-infringement activity to an Internet Protocol (IP) address linked to Kabala's physical address.[6] Appearing pro se, Kabala filed a counterclaim for abuse of process and another "claim" for a "declaration of non-infringement."[7] LHF file a motion for voluntary dismissal of its claims against Kabala, which I granted without prejudice.[8] I also dismissed Kabala's counterclaims against LHF without prejudice and with leave to amend.[9]

Kabala retained counsel and, in January 2018, filed an amended counterclaim that raised the same previous claims: abuse of process and declaratory relief.[10] LHF responded with a flurry of dismissal motions. It moved to dismiss the counterclaims, reasoning that the dismissal of its copyright-infringement claim precluded any declaration of non-infringement and that Kabala could not show that LHF had an ulterior motive in bringing its initial suit, as required for his

---

[5] ECF No. 1. For a detailed background on LHF's "swarm joinder" litigation tactics, *see* ECF No. 90.

[6] ECF No. 7.

[7] ECF No. 22.

[8] ECF No. 72.

[9] *Id.*; *see also* ECF No. 90 (dismissing Kabala's counterclaims).

[10] ECF No. 111.

abuse-of-process claim.[11]  LHF filed a special motion to dismiss under Nevada's anti-SLAPP statute for the abuse-of-process claim.[12]  It also moved to dismiss the declaratory relief claim for lack of subject-matter jurisdiction because LHF had provided Kabala with a covenant not to sue and argued that there was no longer a live controversy.[13]  Based on this covenant, LHF sought to convert the earlier without-prejudice dismissal to one with prejudice.[14]  The parties also stipulated to stay discovery while I resolved the anti-SLAPP motion, but I denied that request.[15]

In a lengthy order, I found that both of Kabala's counterclaims should be dismissed as a matter of law.  Kabala could not obtain declaratory relief when LHF no longer had live claims in this case.[16]  Applying Nevada's framework for resolving anti-SLAPP motions, I also dismissed Kabala's abuse-of-process claim.[17]  I found that the counterclaim challenged LHF's good-faith right to petition the courts and that Kabala had not shown a probability of succeeding on the merits because he provided no evidence that LHF had an ulterior motive or committed an improper willful act when it filed its copyright-infringement action against him.[18]  I also denied as moot LHF's motion to dismiss Kabala's counterclaim for declaratory judgment for lack of subject-matter jurisdiction and I closed this case.[19]  Kabala then moved for reconsideration of that order, which I denied because there was no new evidence to reconsider or pertinent change

---

[11] ECF No. 120.

[12] ECF No. 136.

[13] ECF Nos. 175, 175-1 (covenant).

[14] ECF No. 174.

[15] ECF Nos. 144, 145.

[16] *See* ECF No. 179 at 2.

[17] *Id*. at 3.

[18] *Id*. at 3–9.

[19] *See generally id*.

in the law, and he could not satisfy his burden, even under NRS 41.600's prima-facie standard, to overcome LHF's anti-SLAPP motion.[20]

Two pending motions remain: Kabala's motion for attorney's fees under the Copyright Act, in which he argues that he is entitled to an award based on the with-prejudice dismissal of LHF's copyright infringement claims against him.[21] And LHF's motion for attorney's fees under Nevada's anti-SLAPP law.[22] I resolve each in turn.

## Discussion

**A.    Kabala's motion for attorney's fees under the Copyright Act**

*1.    Whether Kabala is a prevailing party under the Copyright Act*

"The Copyright Act of 1976, 17 U.S.C. § 505, provides in relevant part that in any copyright infringement action 'the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs.'"[23] "A prevailing party is one who has been awarded some relief by the court. . . . The key inquiry is whether some court action has created a 'material alteration of the legal relationship of the parties.'"[24] A with-prejudice dismissal constitutes a "'material alteration of the legal relationship'" between two parties.[25]

---

[20] ECF No. 221.

[21] ECF No. 184.

[22] ECF No. 197.

[23] *Fogerty*, 510 U.S. at 519 (quoting 17 U.S.C. § 505).

[24] *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1149–50 (9th Cir. 2019) (quoting *Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009)).

[25] *Id.*; *see also Clear Skies Nevada, LLC v. Hancock*, 2017 WL 3642034, at *3 (N.D. Ill. Aug. 23, 2017) ("When a court dismisses a copyright case with prejudice, the defendant in such a suit is the prevailing party for purposes of fee-shifting under § 505.").

Kabala argues that he is the prevailing party under § 505 because he forced LHF to "throw in the towel" by moving to voluntarily dismiss its claims with prejudice.[26]  LHF responds that Kabala is not entitled to attorney's fees because: (1) it voluntarily dismissed its claims before Kabala retained counsel; (2) Kabala could not incur attorney's fees under § 505 for the court's conversion of the dismissal to one with prejudice because the copyright-infringement claims were dead, precluding fees for any later discovery; (3) "no counsel for Kabala actually recorded any fees at all, whether for discovery, motion practice, communications, or consultation in defending against any of LHF's previously dismissed copyright claims or in order to secure the conversion of such dismissed claims to a dismissal with prejudice"; and (4) Kabala cannot be awarded attorney's fees on his declaratory-judgment claim because the court dismissed it with prejudice.[27]  Kabala responds that because the first dismissal did not preclude LHF from refiling its claims, his attorney-fee motion for the with-prejudice conversion is within the scope of § 505.[28]

That Kabala obtained a with-prejudice dismissal of LHF's copyright infringement claims is not debatable.[29]  And it was not until then that the "material alteration of the legal relationship" between LHF and Kabala occurred because LHF remained free to refile its claims. Based on the subsequent litigation, Kabala obtained a covenant not to sue and LHF moved to convert its earlier without-prejudice voluntary dismissal to one with prejudice.  As a result, Kabala is the prevailing party under § 505 and is presumptively eligible to recover attorney's fees.

---

[26] ECF No. 184.

[27] ECF No. 190.

[28] ECF No. 199.

[29] ECF No. 179.

5

## 2. Whether the _Fogerty_ factors support an award in Kabala's favor

"In applying [§ 505], district courts are charged with two tasks: first, deciding whether an award of attorneys' fees is appropriate, and second, calculating the amount of fees to be awarded."[30] The United States Supreme Court provided a set of non-exclusive factors to guide this determination in _Fantasy Inc. v. Fogerty_. The _Fogerty_ factors are: "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'"[31] The Ninth Circuit has added the following discretionary factors to the analysis: "the degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'"[32] "[The Ninth Circuit] recently re-affirmed [its] commitment to these factors, but emphasized that district courts should 'accord substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'"[33]

### a. Objective reasonableness and frivolousness

The reasonableness and frivolousness inquiries are similar.[34] "[W]hen a litigant is clearly correct, the likelihood that he will recover fees from the opposing (i.e., unreasonable) party gives

---

[30] _Traditional Cat Ass'n, Inc. v. Gilbreath_, 340 F.3d 829, 832–33 (9th Cir. 2003); _see also Fogerty_, 510 U.S. at 534 ("[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.").

[31] _Fogerty_, 510 U.S. at 535 (adopting and quoting factors from _Lieb v. Topstone Indus., Inc._, 788 F.2d 151, 156 (3d Cir. 1986)).

[32] _Glacier Films (USA), Inc. v. Turchin_, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting _Perfect 10, Inc. v. Giganews, Inc._, 847 F.3d 657, 675 (9th Cir. 2017)).

[33] _Id._ (quoting _Shame On You Prods., Inc. v. Banks_, 893 F.3d 661, 666 (9th Cir. 2018)).

[34] _See generally Glacier Films_, 896 F.3d at 1042–43 (analyzing reasonableness and frivolousness together).

him an incentive to litigate the case all the way to the end. [Afterall, t]he holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small."[35] Though a copyright holder may ultimately lose, that does not necessarily make its legal argument unreasonable. [36]

Kabala argues that this factor weighs against LHF because, for two years, LHF misrepresented that it had PCAP and WORM data before eventually admitting that it did not.[37] Thus, Kabala contends, it was unreasonable for LHF to have Kabala "chase discovery" that LHF knew did not exist. LHF responds that there is no evidence to show that its arguments were unreasonable or baseless—the PCAP and WORM data is merely one method of capturing infringing activity and it had other evidence to support its infringement claim against Kabala.[38]

I already addressed these arguments in my order denying Kabala's motion for reconsideration: LHF used a different "Detection System" in this case, which "accurately reported that by 1:52 a.m. on June 6, 2016, the IP address belonging to Kabala reported it had downloaded a complete copy of LHF's copyrighted [w]ork, had successfully distributed and was distributing pieces of that [w]ork, and have made the entire copy of the [w]ork available to be distributed to others, all via the BitTorrent protocol."[39] The absence of specific PCAP or WORM data does not mean there was no evidence of infringement. LHF's counsel may have misunderstood which forensic program captured the data connecting Kabala to the torrenting

---

[35] *Glacier Films*, 896 F.3d at 1043 (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1986 (2016)).

[36] *Shame On You*, 893 F.3d at 666.

[37] ECF No. 184 at 12.

[38] ECF No. 190 at 7–8.

[39] ECF No. 221 (citing ECF No. 202 at 5).

activity, but that mistake does not undermine my previous conclusion that LHF had a basis for bringing its copyright-infringement claim against Kabala. Notwithstanding this evidence, LHF tried to settle with Kabala on multiple occasions, for as much as $5,000 plus costs and with an agreement that LHF would not refile its claims.[40] But Kabala refused to settle unless LHF provided him a statement "affirming that Kabala didn't infringe LHF's copyright."[41] LHF then moved to dismiss its claims, but Kabala pressed on. This case is entering its third year of litigation, and the parties have bloated the docket with drawn out discovery requests and endless motions to extend time. In sum, this factor weighs against Kabala and his request for an attorney's fee award.

### b.  The degree of success obtained in the litigation

"Actual success in an infringement action involves establishing the defendant's liability."[42] Kabala argues that this factor falls in his favor because he succeeded in getting LHF to admit it did not have the PCAP data that it claimed to have, so its motion asking to convert the without-prejudice dismissal into a with-prejudice dismissal is the same as if I had granted summary judgment or a directed verdict in his favor.[43] LHF seems to concede that the with-prejudice dismissal constitutes success, but argues that a fee award is not justified based on the settlement offers that Kabala rejected.[44]

---

[40] ECF Nos. 190-1, 190 at 11–12.

[41] ECF No. 190-1 (internal quotation and alteration omitted); *see also* ECF No. 190-3 (email exchange).

[42] *Glacier Films*, 896 F.3d at 1038.

[43] ECF No. 184 at 13–14.

[44] ECF No. 190 at 11–12.

The offers have no bearing on this factor. The with-prejudice dismissal makes Kabala a prevailing party and it shows that LHF did not succeed in establishing Kabala's liability. Additionally, the record shows that LHF failed to respond to Kabala's requests for admissions, prompting Kabala to move to have his first and second requests for admission deemed admitted.[45] As a result, the court deemed as admitted that "[Kabala] didn't infringe [LHF's] copyright."[46] This factor weighs in Kabala's favor.

### c. Motivation

Kabala argues that if LHF knew it didn't have the PCPA and WORM data then its motivation for bringing the suit was extortion.[47] But this argument is pure conjecture; I've already rejected Kabala's missing-data argument and he can't point to any evidence of improper motivation. The Copyright Act allows copyright holders like LHF to enforce a copyright even if it is ultimately unsuccessful. And the record shows that LHF repeatedly offered to settle and end this case, including an offer for $5,000 plus costs and an agreement that LHF would not litigate its claims further.[48] But Kabala rejected those offers, set on obtaining a declaration that would "clear [his] name."[49] So, I find that this factor weighs in LHF's favor.

---

[45] ECF No. 74.

[46] *Id.* at 18; *see also* ECF No. 80.

[47] ECF No. 184 at 12.

[48] ECF No. 190-1.

[49] ECF Nos. 190-3, 184-1.

### d. The purpose of the Copyright Act and considerations of compensation and deterrence

"The most important factor in determining whether to award fees under the Copyright Act[ ] is whether an award will further the purposes of the Act."[50] That purpose is to "'encourage the production of original literary, artistic, and musical expression for the good of the public'" by discouraging infringement.[51] "'A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does'"[52]; thus, determining whether objective unreasonableness of a party's position shines light on whether a fee award would undermine the Act's purpose.

Based on the missing PCAP and WORM data, Kabala contends that LHF's lawsuit did not further the Copyright Act's purpose.[53] LHF responds that its lawsuit furthered one of the Act's purposes—discouraging infringement—and it contends that this court should not reward Kabala because there was evidence of infringement and it was entitled to damages but it decided not to pursue them.[54]

This factor doesn't favor either party. On one hand, LHF furthered the Copyright Act's deterrence objective because LHF traced an IP address involved with torrenting its movie to Kabala. In light of the IP-address evidence, a fee award would undermine the Copyright Act's

---

[50] *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1149 (9th Cir. 2019) (internal quotation omitted).

[51] *Id.* (citing *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (internal citations omitted)); *see also Fogerty*, 510 U.S. at 526 ("[O]ne of the goals of the Copyright Act is to discourage infringement.").

[52] *Gold Value*, 925 F.3d at 1149 (quoting *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014)).

[53] ECF No. 184 at 14.

[54] ECF No. 190 at 10–11.

deterrence objective.  On the other hand, Kabala mounted a successful defense: he obtained an admission that he did not infringe LHF's copyrights and a judgment on the merits.  Thus, both party's positions advance the Copyright Act's objectives, and a fee award would neither compensate nor deter infringing activity.

On balance, the bulk of the *Fogerty* factors weigh against an attorney-fee award.  LHF's claims against Kabala were reasonable, non-frivolous, properly motivated, and consistent with the Copyright Act's objectives—all based on the IP address linking Kabala to infringing activity. While Kabala obtained a with-prejudice dismissal and admission of non-infringement, he did so after LHF offered to settle on multiple occasions and after it had moved to voluntarily dismiss its claims without prejudice.  So I deny Kabala's motion for an award of $132,688 in attorney's fees.

**B.      Kabala's motion for costs**

Federal Rule of Civil Procedure 54(d)(1) provides that a prevailing party is entitled to statutory costs "as a matter of course."  Section 505 of the Copyright Act provides for an award of costs, so I find it appropriate to award Kabala costs here.  Based on the bills of cost the defendants submitted on September 7, 2018, I conclude that Kabala is entitled to costs in the amount of $3,526.98.

**C.      LHF's motion for attorney's fees under Nevada's anti-SLAPP statute**

Nevada's anti-SLAPP law allows an "award of reasonable costs and attorney's fees to the person against whom the action was brought" and has obtained a dismissal.[55]  Based on this language, it appears that an award for attorney's fees under NRS § 41.670(1)(a), like under

---

[55] Nev. Rev. Stat. § 41.670(1)(a).

California's anti-SLAPP statute, is mandatory.[56]  However, the court has discretion in determining what amount is reasonable.[57]

### 1. LHF's motion is timely

Kabala argues that LHF's motion for attorney's does not comply with Local Rule 54-14 because it is late, among other reasons.[58]  When I granted LHF's anti-SLAPP motion, I specifically stated that any motion for attorney's fees had to comply with Local Rule 54-14.[59]  Local Rule 54-14 allows a moving party 14 days after the entry of a final judgment to file and serve its motion for attorney's fees.  Because my final-judgment order issued on August 24, 2018, LHF had until September 7 to move for attorney's fees.  However, Kabala decided to move for reconsideration of my ruling on the anti-SLAPP motion, so the parties stipulated to extend that deadline to 14 days after my ruling on the reconsideration motion.[60]  On September 25, I denied the stipulation because I did not find good cause for the extension, granting LHF 10 more days to file its motion for attorney's fees.[61]  LHF filed the motion on October 6[62]—one day late—explaining that it was only 10 minutes late and "there is good cause to permit a de minimis [delay]" because Nevada's anti-SLAPP statute favors an award of attorney's fees to a prevailing

---

[56] *See Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1152 (N.D. Cal. 2017) (explaining that an award under Civ. Proc. § 425.16(c)(1) is mandatory for a prevailing defendant); *Christian Research Inst. v. Alnor*, 165 Cal, App. 4th 1315, 1321 (2008) (same).

[57] *Fleming v. Coverstone*, 2009 WL 764940 at *6 (S.D. Cal. Mar. 18, 2009) ("The court, however, has broad discretion in determining the reasonable amount of attorney's fees and costs to award to a prevailing defendant.")

[58] ECF No. 204.

[59] ECF No. 179 at 9.

[60] ECF No. 182.

[61] ECF No. 192

[62] ECF No. 197.

party and because "the Court took LHF by surprise" when it denied the stipulation, causing it to scramble to draft the motion and leaving no time to deal with "computer and filing issues."[63] LHF moved for a retroactive extension under Rule 6(b), arguing that the delay was based on excusable neglect, and I granted the request on April 23, 2019.[64] Thus, the motion is deemed timely filed.[65]

### 2. *Scope and amount of recovery*

LHF originally sought $72,674.50 for attorney's fees that it incurred litigating its anti-SLAPP motion and responding to discovery requests on Kabala's abuse-of-process counterclaim.[66] LHF adds that its response to Kabala's motion to reconsider and motion to strike LHF's opposition to that motion also fall under the scope of allowable recovery.[67] So, LHF moves to amend its billing history and now asks for $112,362.50.[68] Kabala argues that a maximum of $11,608 is appropriate, as this amount reflects only the fees for the anti-SLAPP motion and related legal research.[69] LHF replies that Kabala engaged in discovery to prove up his abuse-of-process claim, thus requiring LHF to respond to his requests and to incur expenses, which LHF contends is intertwined with the anti-SLAPP motion.[70]

---

[63] ECF No. 207 at 3, 12–14.

[64] ECF Nos. 209, 219.

[65] ECF No. 219.

[66] ECF No. 197.

[67] ECF No. 207

[68] *Id.* at 8–9.

[69] ECF No. 204.  Kabala also argues that LHF failed to file a proper bill of costs, which Local Rule 54-11 requires to recover for paralegal services, office overhead, and travel expenses.  *Id.* at 10.  But LHF is not seeking to recover for any of those expenses.  *See* ECF No. 207 at 3.

[70] ECF No. 207.

Kabala takes too narrow of a view in response. "[T]he anti-SLAPP statute is 'intended to compensate a defendant for the expense of responding to a SLAPP suit . . . [T]he provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting [it]self from a baseless lawsuit.'"[71] The general rule is that a party can recover attorney's fees for the anti-SLAPP motion itself, "and not the entire action."[72] In *Graham-Sult v. Clainos*, the Ninth Circuit explained that the general rule doesn't apply if "the entire action against the [prevailing party] was subject to the [anti-SLAPP] motion [such that] no causes of action against them survived it."[73] In that case, the court allowed the prevailing party to recover additional expenses incurred in litigating the motion, including "time lawyers spent on the motion to dismiss, reply, other filings, document review, and preparing initial disclosures."[74] Thus, the additional fees were appropriate because the anti-SLAPP motion disposed of the entire action. However, that holding was limited by an absence of controlling state law.[75] More recently, and based on a California appellate decision, the Ninth Circuit explained that the anti-SLAPP fee statute did not allow recovery for "'matters unrelated to the anti-SLAPP motion, such as . . . summary judgment research,' because such matters are

---

[71] *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 45 Cal. Rptr. 3d 633, 637 (Cal. Ct. App. 2006)). Though *Graham-Sult* was interpreting California's anti-SLAPP laws, I find its reasoning persuasive. *See Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) (looking to California law for guidance "[b]ecause this court has recognized that California's and Nevada's anti-SLAPP "statutes are similar in purpose and language").

[72] *Graham-Sult*, 756 F.3d at 752.

[73] *Id.*

[74] *Id.*

[75] *Century Sur. Co. v. Prince*, 782 F. App'x 553, 558 (9th Cir. 2019) (quoting *569 E. Cty. Blvd. LLC v. Backcountry Against The Dump, Inc.*, 212 Cal. Rptr. 3d 304, 310–11 (Cal. Ct. App. 2016) (internal quotation marks omitted) (explaining that fees for "summary judgment research" fell outside the scope of, and were unrelated to, the anti-SLAPP motion).

not 'incurred in connection with the anti-SLAPP motion.'"[76]  Nevada follows California law on this issue,[77] so awardable attorney's fees are limited to those incurred in litigating the anti-SLAPP motion itself and matters that arise out of that motion practice.

Aside from the fees directly tied to its anti-SLAPP motion, LHF seeks $59,868.40 in attorney's fees for responding to Kabala's discovery requests to prove his abuse-of-process claim.[78]  LHF contends that the *Graham-Sult* rule extends to discovery that a court permits on issues that are "'inextricably intertwined' with those issues raised in the anti-SLAPP motion." LHF relies on the unpublished, out-of-jurisdiction order in *Henry v. Bank of Am. Corp.*, among others, to support its position.[79]  But its reliance on *Henry* is misplaced.  The *Henry* court authorized depositions and document production so that the non-moving party could "complete limited discovery in responding to the anti-SLAPP motion,"[80] and *Henry* predates the cabined view that the Ninth Circuit has more recently adopted for anti-SLAPP fee awards.  Here, neither party identified additional discovery required to litigate the anti-SLAPP motion.  To the contrary, they filed a stipulation to stay discovery pending my decision on the motion.  So *Henry* is not helpful.

LHF's anti-SLAPP motion turned on whether its complaint alleging copyright infringement and pre-filing correspondence constituted protected communications under

---

[76] *Id.*

[77] *Supra* at n.71.

[78] ECF No. 207 at 9–10.  LHF also seeks to recover $8,229 in attorney's fees for responding to Kabala's motion for fees and bill of costs after Kabala obtained the with-prejudice dismissal of LHF's copyright-infringement claims.  *Id.* at 10.  But LHF does not even attempt to argue how that work was related to its anti-SLAPP motion, so I deny its request.

[79] *Henry v. Bank of Am. Corp.*, 2010 WL 3324890, at *4 (N.D. Cal. Aug. 23, 2010).

[80] *Id.*

NRS § 41.637, and it sought a dismissal of only the abuse-of-process claim.[81]  The stipulation to stay discovery argued that the state-law automatic stay provision under NRS § 41.660(4)(e) and (f) applied in federal court,[82] but the parties failed to explain why the court should depart from the well-settled authority grounded in the Federal Rules of Civil Procedure and instead apply an automatic stay provision grounded in state law.[83]  The stipulation also failed to explain why the court should stay all discovery when LHF's anti-SLAPP motion did not impact all of Kabala's counterclaims and discovery had been ongoing for months and was nearing its end.[84]  Because at least some of the discovery was unrelated to the abuse-of-process claim and not directly connected to the anti-SLAPP motion, an award for those fees is inappropriate.

LHF also seeks $47,873 in attorney's fees for its opposition to Kabala's motion to reconsider and motion to strike LHF's response to the same and this motion for attorney's fees.[85] Kabala's motion to reconsider focused solely on my dismissal of the abuse-of-process claim based on my determinations that LHF's copyright-infringement lawsuit was a protected communication and that Kabala could not show that LHF had an ulterior motive or committed an improper act by filing its lawsuit thus meriting dismissal under Nevada's anti-SLAPP law.[86] Kabala's motion to reconsider was therefore directly connected to the anti-SLAPP motion, so LHF is entitled to an award of attorney's fees for that work.  And, in the absence of controlling Nevada precedent, I defer to California's general rule that the fee award for a successful anti-

---

[81] ECF No. 136.

[82] ECF No. 144.

[83] ECF No. 145.

[84] *Id*.

[85] ECF No. 207 at 10.

[86] ECF No. 187.

SLAPP motion "includ[es] those necessary to establish and defend the fee claim."[87]  In sum, LHF may recover for attorney's fees for the anti-SLAPP motion, its opposition to Kabala's motion to reconsider and motion to strike LHF's response to that motion, and this motion for attorney's fees.

### 3.  *Amount of recovery*

Calculating an award of attorney's fees is a two-step process.  The court must first assess the reasonableness of fees under the lodestar method: computing a reasonable fee by multiplying (1) "the number of hours reasonably expended in the litigation" by (2) a "reasonable hourly rate."[88]  It must then determine whether the lodestar amount should be increased or reduced in light of the factors first outlined in *Kerr v. Screen Extras Guild, Inc.* that are not already incorporated into the lodestar calculation.[89]  These factors, also found in this district's local rule 54-16,[90] are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

---

[87] *Ketchum v. Moses*, 17 P.3d 735, 747–48 (Cal. 2001) ("The Court of Appeal correctly rejected the argument: an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16."); *Thornbrough v. W. Placer Unified Sch. Dist.*, 2010 WL 3069321, at *3 (E.D. Cal. Aug. 3, 2010) (awarding fees for fee motion).

[88] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[89] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir . 2014).

[90] *Carter*, 757 F.3d at 868 (quotation omitted).

professional relationship with the client; and (12) awards in similar cases.[91]

"This circuit requires that courts reach attorneys' fee decisions by considering some or all of" the Kerr factors, and "[a] mere statement that the court has considered the *Kerr* guidelines does not make a decision within the court's discretion."[92]  Nevertheless, the lodestar should only be modified in exceptional cases.[93]

> ### a.    Reasonable hourly rate

An hourly rate is reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[94] LHF asks for $55,729[95] for the work of Weide & Miller, Ltd.'s three attorneys: Christopher Austin (billing at $360 per hour), Brian Prince ($275), and Ryan Gile ($320); and two paralegals: Sally Wexler ($125) and Brianna Show ($110).[96]  To support the reasonableness of its requested fees, LHF argues that it relied heavily on LHF's associate counsel whose hours are not reflected in the motion,[97] but it fails to submit any evidence to show that the rates for Austin, Gile, and

---

[91] *Id.* at 869.

[92] *Id.* at 868–69.

[93] *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

[94] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007); *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206–07 (9th Cir. 2013) (applying lodestar test to paralegals).

[95] This figure represents the requested fees for preparing and filing the anti-SLAPP motion ($7,856), *see* ECF No. 207 at 9, and preparing and defending this motion for attorney's fees, responding to Kabala's motion to reconsider and motion to strike LHF's opposition to the same, and related stipulations. *See id.* at 10.  The figure excludes $59,868.40 for discovery-related work and $8,229 in fees incurred for responding to Kabala's motion for attorney's fees and bill of costs, which are unrelated to the anti-SLAPP motion.

[96] ECF No. 207 at n.42, 45, 52.

[97] *Id.* at 9, n.48.

18

Prince are reasonable.[98]  LHF argues that Austin's $360 hourly rate and Gile's $320 hourly rate are "well withing the prevailing market hourly rates in this forum which range to $450 for partners and $250 for experienced associates."[99]  LHF provides evidence to show that qualities of its advocates and their levels of experience: Austin (20 years), Gile (10 years).[100]  But LHF fails to submit any evidence to show that rates for its paralegals and attorney Prince are reasonable.

Despite the lack of evidence, I recognize that the requested hourly rates of $360, $320, and $275 are under the "$400 or less" regular rate used by other courts in this district.[101]  I also note that the reasonable hourly rate for paralegals in this district is between $75 and $125, a range that captures the rates of both Wexler and Show.  I find no reason to deviate from the general trend.

      *b.    Reasonable hours expended*

To show that hours expended are reasonable under the lodestar calculation, a movant must "submit evidence supporting the hours worked."[102]  "Where the documentation of hours is

---

[98] *See Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) ("When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours worked and the rate paid.")

[99] ECF No. 197 at 7 (citing *Perrigo v. Premium Asset Servs., LLC*, 2015 WL 4597569, at *10 (D. Nev. July 28, 2015) ("Rate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this forum.") (collecting cases)).

[100] ECF Nos. 197-1, 197-2.

[101] *See Int'l Inst. of Mgmt. v. Org. for Econ. Cooperation & Dev.*, 2019 WL 5578485, at *6 (D. Nev. Oct. 29, 2019) (collecting cases finding that an hourly rate between $250 and $400 is reasonable for this market).

[102] *Hensley*, 461 U.S. at 433; *Welch*, 480 F.3d at 948 (9th Cir. 2007) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)).

inadequate, the district court may reduce the award accordingly."[103]  Ultimately, "the district

court has discretion in determining the amount of a fee award. . . .  But [i]t remains

important . . . for the district court to provide a concise but clear explanation of its reasons for the

fee award."[104]

Based on Austin and Gile's declarations and the billing records, the attorneys spent the

following hours on the anti-SLAPP motion: Austin (14.8 hours) and Gile (5.9 hours); and the

following hours for the opposition to Kabala's motion for reconsideration and related filings:

Austin (131.3 hours) and Prince (2.2 hours).[105]  All of paralegal Wexler's billing[106] and all but

1.5 hours of Show's billing[107] related to discovery and other matters beyond the scope of anti-

SLAPP motion.  Based on this billing, the lodestar in this case is $55,254.  These hours are

supported by itemized billing invoices from Weide & Miller, and both Austin and Gile declare

that they have reviewed the records and that the amounts incurred are reasonable.

Although I find no basis to question the billing on the anti-SLAPP motion, I find attorney

Austin's claimed time on the opposition to the motion for reconsideration excessive.  Based on

the billing records, he spent approximately 75 hours preparing that opposition.[108]  The motion

itself was just 18 pages long, and the opposition brief is 22 pages.[109]  In the four days leading to

---

[103] *Id.*

[104] *Carter*, 757 F.3d at 869 (quoting *Hensley*, 461 U.S. at 437–39).

[105] These totals exclude billing for discovery work and LHF's opposition to Kabala's motion for fees, which I have explained are unrelated to the anti-SLAPP motion and thus improper bases for a fee award.

[106] *See* ECF No. 207-3 at 3.

[107] *Compare id.* at 2–34, *with id.* at 34.

[108] ECF No. 207-3 at 30–38.

[109] *See* ECF Nos. 187, 202.

the opposition's filing, Austin billed 48.1 hours on the document, with 19 of those hours billed the final filing day of October 16, 2018.[110]  Although I recognize that the opposition also contained reports and declarations that required additional work, I find 75 hours on an opposition to a motion for reconsideration—$27,000 in billings—excessive for this endeavor based on my own experience in both reviewing such bills as a jurist and light of my extensive prior civil-litigation motion practice.  I find that a 30% reduction to those 75 claimed hours is appropriate here.  So I deduct $8,100 from the awardable total for Austin's work, taking the lodestar figure to $47,154.00.

### c.  Factors under <u>Kerr</u> and Local Rule 54-16

I now consider whether the $47,154 lodestar should be modified under the *Kerr* factors and Local Rule 54-16.  There is a "strong presumption" that the lodestar figure represents a reasonable fee and that the court should enhance or reduce it only in rare and exceptional cases.[111]  The parties have not provided—and I see no basis myself—to further adjust the lodestar figure here.  This case involved nuanced copyright-infringement issues that required both parties to spend hundreds of hours in attorney and paralegal time.  LHF's attorneys also count over 30 years of cumulative experience between partners at the firm, including 10 years' experience litigating intellectual-property suits.  LHF offered to settle with Kabala on multiple occasions, and Kabala's rejection of those offers resulted in prolonged litigation.  While Kabala succeeded in obtaining a with-prejudice dismissal of LHF's copyright-infringement claims, LHF succeeded in obtaining a dismissal of Kabala's counterclaims.

---

[110] *See* ECF No. 207-3 at 37–39.

[111] *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

**Conclusion**

Accordingly, it is hereby ORDERED that defendant's motion for attorney's fees and costs **[ECF No. 184]** is **GRANTED in part and DENIED in part**. **Kabala is awarded costs in the amount of $3,526.98.**

It is FURTHER ORDERED that LHF Productions, Inc.'s Motion for Attorney's Fees **[ECF No. 197]** is **GRANTED in part and DENIED in part**. **LHF is awarded $47,154 in attorney's fees** under NRS § 41.670.

The Clerk of Court is directed to **ENTER AN AMENDED JUDGMENT** accordingly.

DATED: December 31, 2019

_____
United States District Judge Jennifer A. Dorsey